## SIDNEY STEVENS IMPLEMENT CO. v. BOWERBANK.

No. 7337.   Decided December 6, 1949.   (212 P. 2d 182.)

See 27 C. J. S., Frauds, Statute of, sec. 232. Party walls as affected by oral agreement, see note, 140 A. L. R. 1425. See, also, 40 Am. Jur. 488.

*Thatcher & Young,* Ogden, for appellant.

*Samuel C. Powell,* Ogden, *Samuel H. Barker,* Ogden, for respondent.

LATIMER, Justice.

This is an action for the recovery of one-half the cost of a party wall. The parties are adjoining landowners. Prior to December 11, 1945, both contemplated erecting a new business building on their respective premises and on that day they entered into a written contract wherein it was mutually agreed that appellant should construct, as part of its building, a party wall for the joint use of both parties. The agreement further provided that the wall was to be constructed in accordance with the plans and specifications then being prepared by appellant's architect along a propery line previously established by one Craven, a licensed surveyor, as the boundary separating their lands. It was further agreed that as soon as the building was completed to the point where the total cost of the party wall was ascertainable, respondent should be required to pay appellant one-half its cost. Appellant's architect, on the first day of December, 1945, invited bids for the construction of the building. The specifications required that the bids contain a statement as to the cost of constructing the party wall. A bid was submitted on December 17, 1945, by the C. B. Lauch Construction Company, hereinafter called the contractor, proposing to construct the building for the sum of $16,000.00. On the next day the contractor submitted to appellant an estimate of $4,435.00 as the cost of the party wall. Neither the amount of the bid nor the estimated cost of the wall were disclosed to respondent. The original plans and specifications provided that all exterior walls were to be twelve inches in width and constructed of common brick. On the 26th day of December, 1945, this provision was changed to provide that the exterior walls (including the party wall) should be constructed of lava ash blocks. On the same day, appellant and the contractor

entered into an agreement reducing the overall cost of the building by the sum of $623.00. According to plaintiff's secretary and treasurer, $200.00 of this amount represented the reduction in the cost of constructing the party wall. The balance of $423.00 related to changes in other parts of the building which are not material here. After the party wall had been completed, appellant charged respondent $2,217.50, which was one-half of the original estimate of the cost of the wall submitted to appellant by its building contractor. Respondent refused to pay this amount, claiming it was excessive.

At the trial appellant put in evidence the contracts referred to above and the contractor's letter that the cost of the party wall was estimated to be $4,435.00. Appellant asserts that the party wall cost it that amount and that under the terms of the party wall agreement, respondent is obligated to pay appellant one-half that amount or $2,217.50.

The building contractor was out of the State of Utah at the time of trial and consequently was not a witness. A letter written by him to counsel for respondent long after the wall had been erected was introduced into evidence by the appellant. Therein he fixed the total cost of constructing the wall at $3,127.00. The appellant contends that if the contractor's original estimate of $4,435.00 be rejected, that the cost to appellant was not less than $3,127.00, the amount appellant's contractor later stated the cost to be.

The principal witness testifying in respondent's behalf was Mr. Jack Hilton, who testified that he had been employed as superintendent of the contractor while appellant's building was in the process of construction, and that he furnished respondent, at the latter's request, with a statement of that company's cost of constructing the party wall. Hilton admitted the wall had been completed before he was employed by the contractor but claimed to have had all of his employer's original records. According to this witness these records established the cost of the wall to be $2,530.00.

Two other witnesses, testifying on behalf of the respondent, estimated the reasonable cost of constructing the wall. One testified the cost would be $2,348.87, while the other indicated a slightly higher cost of $2,500.00.

At the conclusion of the case, the question as to the cost of constructing the party wall was submitted to the jury on a special interrogatory. The jury's answer fixed the cost at $2,750.00.

Appellant first contends the court erred in admitting into evidence the testimony of respondent's expert witnesses as to the reasonable cost of constructing the party wall and in permitting the jury to infer from this testimony what appellant had been charged. Appellant further contends that under the party wall agreement, it was permitted to bind respondent to pay one-half the cost of building the party wall as established by the estimate submitted; that under the agreement respondent would be required to share a bad bargain or benefit from a good bargain, depending upon whether appellant secured an advantageous or disadvantageous contract; and that the question to be decided was not what was the reasonable cost of constructing the wall, but rather what did the appellant pay. Appellant might be correct in these contentions if the contract required respondent to pay one-half of the amount bid by the contractor but such is not the language of the agreement.

The language of the contract relied upon by both parties is as follows:

"* * * the said party of the second part, his heirs and assigns as aforesaid, shall as soon as said building to be constructed by party of the first part *shall have been completed to the point where the total cost of the South wall shall have been ascertained, shall pay to said* party of the first part or its assigns the full one-half of the total cost of said South wall * * *."

In referring to the provision of the contract above set forth, it is clear that the respondent did not agree to pay

one-half of an estimated cost of the wall but rather, one-half the actual cost. The agreement contemplates completion of the wall to a point where the actual cost of construction is ascertainable before the obligation of the respective parties should be computed. The original statement of appellant's contractor that he was fixing the cost of constructing the wall at $4,435.00 was necessarily merely an estimate, inasmuch as it was based solely on the plans and specifications of the building before any work had been commenced. The actual cost after completion was fixed by the contractor as $3,127.00 and by his foreman or superintendent as $2,530.00.

Appellant seeks to destroy the effect of the foreman's testimony by claiming that even if the contractor's original estimate be rejected, the letter written by him to respondent's counsel would be the only competent evidence upon which the actual cost of construction could be ■ founded. In that letter, written long after the wall had been completed, the contractor estimated the cost of constructing the wall as $3,127.00. Mr. Hilton, as superintendent for him during a large part of the time in which appellant's building was being erected, testified that although he was not employed by the contractor until after the wall had been completely constructed, he had in his possession, at the time of trial, the contractor's original records showing a complete breakdown of the cost of constructing the building and that according to those figures, the party wall cost appellant the sum of $2,530.00.

In the letter written to counsel for respondent, the contractor did not purport to be giving an exact statement of the cost of the wall, inasmuch as he wrote as follow:

"Dear Sir:

"We are enclosing our *cost estimate* of the party wall between the Sidney Stevens and Bowerbank Building and trust that it will suit your purpose.

"Yours very truly,"
(Italics ours.)

It would appear that at best, the contractor could only estimate the cost, as according to Mr. Hilton, the records from which the contractor could compute the cost of the party wall at the time he wrote the letter were in Mr. Hilton's exclusive possession and the contractor had no access to them because he was out of the state. Under these circumstances the jury could believe the foreman and there would be competent evidence to support the findings. We conclude that the errors assigned in this connection are without merit.

The appellant next contends the court erred in denying its motion for non-suit and directed verdict on respondent's counterclaim. The following are the provisions of the contract and the facts involved in this connection.

The controlling provisions of the party wall agreement are as follows:

"It is further agreed by and between the said parties that said wall shall be constructed in accordance with the plans and specifications now being prepared by the architect employed by party of the first part; that the boundary line as heretofore fixed by said surveyor [previously identified in the contract as H. J. Craven & Sons, Civil Engineers] and marked upon the premises shall be considered as the center line of said south wall, and that the same shall be constructed one-half thereof on each side of said line so established as aforesaid."

After entering into this agreement and just prior to the time construction on the wall commenced, respondent hired a surveyor to ascertain whether the agreed boundary line was the true boundary line. A discrepancy in the two surveys appeared and according to one Stowe, respondent's surveyor, the agreed boundary line encroached some 11¼ inches onto respondent's property. The record establishes that this discrepancy was brought about by virtue of the fact that the two surveyors used different descriptions. Respondent had purchased the property from either the appellant or the Frank J. Stevens estate and the description used in this deed was the foundation for the Craven

survey. Apparently, Ogden City had levied certain taxes and special assessments against the property, the same were not paid and Ogden City obtained title thereto by virtue of a foreclosure of the tax liens. The respondent redeemed the property from this tax sale and the description used by Ogden City in its quitclaim deed was used as the foundation for Stowe's subsequent survey. This quitclaim deed apparently took into account the coverage existing in that block and consequently covered a slightly larger tract of land than was included in the deed conveying the interest of the Stevens estate. The discrepancy between the two surveys was in all probability caused by these two different descriptions.

After respondent discovered the discrepancy, he contacted appellant's officers about the matter and after some discussion one of the officers accompanied respondent to the property and orally agreed that the wall should be constructed with its center two inches south of the boundary line established by Stowe's subsequent survey. Defendant's officer thereupon had the new location marked on the sidewalk in accordance with this oral agreement. However, respondent claims that after the wall had been constructed, he discovered that the oral agreement had not been complied with and that the wall had been constructed upon the line originally agreed upon. The value of the nine and one-fourth inches of property involved in this shifting of the dividing line is the subject of the counterclaim.

The written party wall agreement is clear that at that time the parties intended the wall to be constructed on the line established by the Craven survey. This contract was in writing and if it created an interest ■ in land it met the requirements of the Statute of Frauds. Unless the subsequent oral agreement modified or changed the original written contract, then defendant's cause of action set out in its counter claim must fail.

In support of respondent's theory that the subsequent oral contract was valid and enforcible, we are referred

to the case of *Tripp* v. *Bagley*, 74 Utah 57, 276 P. 912, 916, 68 A. L. R. 1417. That case held that where there is a dispute as to the location of the true boundary separating properties of adjoining landowners, a parol agreement resolving those differences is not invalid as being within the Statute of Frauds

"provided the agreement is followed by actual or constructive possession by each of the owners up to the line so agreed upon."

Although the jury, in the instant case, found the parties entered into a parol contract establishing an agreed boundary some nine and one-fourth inches north of the center line of the party wall as constructed, that finding alone is not sufficient to establish the boundary in accordance with the agreement. The jury was not asked to nor could it find from the evidence that the parties had taken actual or constructive possession up to the agreed line. The construction of the wall some nine and one-fourth inches from the agreed line precluded any such finding.

The most that can be claimed by respondent is that there was an oral agreement but without evidence of occupancy this would not create or recreate an interest in real property and would be unenforcible. The respondent having failed to establish that the subsequent oral agreement was valid and enforcible, must then have his rights determined by the provisions of the written contract. The quoted provision binds respondent to a property line located on the Craven survey and this is the line used by the contractor in constructing the wall. Having complied in all respects with these provisions, appellant is not chargeable with paying the value of the nine and one-fourth inches in dispute.

That part of the judgment awarding respondent the sum of $151.42 is reversed. Otherwise, the judgment is affirmed. Each party to bear his or its own costs.

PRATT, C. J., and WADE, WOLFE and McDONOUGH, JJ., concur.